IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CYD MARIE CORDERO PAREDES, by herself and in representation of her minor son, MARKUS RIVERA CORDERO; OSVALDO RIVERA ROMAN;<br><br>Plaintiffs,<br><br>vs.<br><br>HOSPITAL BUEN SAMARITANO; HOSPITAL DE LA CONCEPCIÓN; DRA. MABEL M.BONILLA RODRÍGUEZ and the CONJUGAL PARTNERSHIP constituted between MABEL BONILLA RODRÍGUEZ and JOHN DOE BONILLA; DR. MIGUEL SUÁREZ VILLAMIL and the CONJUGAL PARTNERSHIP constituted between DR. MIGUEL SUÁREZ VILLAMIL and JANE DOE SUÁREZ; DRA. LAURA S. PUIG MARRERO and the CONJUGAL PARTNERSHIP constituted between LAURA S. PUIG MARRERO and JOHN DOE PUIG; RICHARD ROE; JANE DOE; DOCTOR JOHN ROE; CORPORATIONS X, Y & Z;<br><br>Defendants. | CIVIL NO.  15-2140<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs through their undersigned attorney and very respectfully **STATE, ALLEGE AND PRAY:**

**I. JURISDICTION**

1.1    The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Section 1332 (a) (1).

1.2    This action is of a civil nature, invoking exclusive of interest and costs a sum in excess

of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).  Every issue of law and fact alleged herein is wholly between citizens of different states.  Plaintiffs invoke the diversity jurisdiction of this Honorable Court pursuant to the provisions of Article III of the Constitution of the United States.

     1.3    The Statute of Limitations was tolled by claim letters timely delivered to codefendants.

## II.  THE PARTIES

     2.1    Plaintiff Cyd Marie Cordero Paredes is the mother with custody and full parental rights of minor co-plaintiff Markus Rivera Cordero.  She is of legal age, is and has been citizen and resident of the state of Texas and is domiciled at 6195 N. Major Drive,  Apt 614, Beaumont ,TX  77713.

     2.2    Co-plaintiff Markus Rivera Cordero, represented by his mother co-plaintiff Cyd Marie Cordero, is a minor, the son of co-plaintiff Cyd Marie Cordero Paredes and Markus is and has been citizen and resident of the state of Texas and is domiciled at 6195 N. Major Drive,  Apt 614, Beaumont ,TX  77713 under the custody of his mother.

     2.3    Co-plaintiff Osvaldo Rivera Román is the father of Markus Rivera Cordero.  He is of legal age, is and has been a citizen of the state of Texas and is domiciled at  5305 Gulfway Dr., Apt. 56, Groves, TX  77619.

     2.4    Codefendant Hospital Buen Samaritano Inc., is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the said Commonwealth of Puerto Rico.

     2.5    Codefendant Hospital de la Concepción, is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the said Commonwealth of

Puerto Rico.

2.6     Codefendant Dr. Mabel Bonilla Rodríguez, her husband and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.

2.7     Codefendant Dr. Laura S. Puig Marrero, her husband and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.

2.8     Codefendant Dr. Miguel Suárez Villamil, his wife and the conjugal partnership formed between them are citizens of the Commonwealth of Puerto Rico.

2.9     Codefendants, whose names are unknown to plaintiffs, Dr. Richard Roe, Jane Doe, John Roe are citizens of the Commonwealth of Puerto Rico and are jointly and severally liable to plaintiffs.

2.10    Codefendants Corporations X, Y & Z, whose name is unknown to plaintiffs, is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

### III. ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

3.1     On September 27, 2015, co-plaintiff Markus Rivera Cordero was born in Hospital Buen Samaritano at 9:44 PM in a severely depressed state after a very traumatic delivery.

3.2     Upon arrival to the nursery he was described with generalized cyanosis, pronounced paleness, hypoactive, flaccid, with no response to stimuli and in critical condition.

3.3     On that same day in the morning his mother, co-plaintiff Cyd Marie Cordero, 23 years old in her first pregnancy, with 36 weeks of gestation, had visited her obstetrician, co-defendant Dr. Mabel Bonilla because she was feeling pelvic pressure and some secretions.

3.4     Upon examination her cervix had 3cm. dilation, had a 100% effacement, -1 station,

her membranes were intact, she had no contractions and no pain.

3.5   Dr. Bonilla told Ms. Cordero that she was in labor and instructed to go to Hospital Buen Samaritano.

3.6   At 1:00PM she was admitted to the hospital for labor induction as per the nurses' note.

3.7   According to the medical record Cyd Marie was started on a Pitocin drip for labor induction at 1:15PM and fetal monitoring was also started at around that time.

3.8   Co-defendant Dr. Bonilla ruptured her membranes at around 3:50 PM.

3.9   Labor progressed and according to the medical record Demerol 50mg and Phenergan 25mg were administered around 5:00PM for analgesia.

3.10   The medical records from Hospital Buen Samaritano is completely unreliable for establishing the events and the actual treatment and monitoring given by the hospital personnel, Dr. Mabel Bonilla and Dr. Laura Puig.

3.11   On two occasions plaintiffs requested a certified copy of the medical records. The Hospital provided them with two very different and inconsistent records, clearly altered, and to this day still incomplete. The second record contains Dr. Bonilla's progress notes which were substituted by new, different and rewritten notes; nurses notes which were not produced in the first version; illegible and very poorly documented monitoring and progression of labor notes, medications administered which were not included in the kardex, fetal monitor tracings which are not properly identified as belonging to the patient, no description of crucial events and the time at which they occurred; even the time of birth was changed.

3.12   Co-plaintiff Cyd Marie Cordero remembers how despite her best efforts of pushing

and her baby's head being completely visible the baby would not come out and at some point the baby's fetal heart rate started showing signs of depression and Dr. Bonilla used a vacuum to try to deliver the baby but the baby would not come out. Dr. Bonilla continued attempting to deliver the baby with multiple maneuvers but the baby's shoulder would not come out. Dr. Bonilla then called a green code. After much manipulation her baby was delivered and she could hear Dr. Bonilla say that the baby had no color and the personnel saying that the baby was not responding.

3.13    Cyd Marie remembers that sometime after around 8:00PM Dr. Bonilla was upset with her because she said she was not pushing enough and ordered that she be administered some medication and left the delivery room instructing the nurses to call her when the baby was ready to be delivered and that she then came back after 9:00PM.

3.14    Markus' father was taking pictures during the delivery and Dr. Bonilla ordered him out of the delivery room.

3.15    Ms. Cordero's delivery was complicated by shoulder dystocia, a presentation known as one of the complications of induced labor.

3.16    Markus' Apgar score was documented at 3 after the first minute of life and five (5) minutes later (APGAR 3/1); although there is no written note indicating how this APGAR score was assigned.

3.17    According to the medical record co-defendant Dr. Laura Puig, the hospital pediatrician, was at the delivery room when Markus was born.

3.18    In the delivery room Markus was given oxygen by Ambu bag and did not respond and the physicians attempted to intubate him with no success.

3.19    Narcan was also given in the delivery room.

3.20    Markus was taken to the Intermediate Care nursery at 10:00PM by Dr. Bonilla and Dr. Puig with diagnosis of perinatal asphyxia and respiratory distress syndrome.

3.21    Another attempt to intubate Markus was made by Dr. Puig with no success. Another physician, a Dr. García, from the emergency room finally intubated Markus and he was then connected to a mechanical ventilator. The time of intubation was not recorded in the record; however it is clear that it was after 10:00PM.

3.22    Markus was given another dose of Narcan in the nursery.

3.23    Arterial blood gases done around 11:00PM reflected a PH of 7.17, PCO2 18.10 and base excess of -20; severe metabolic acidosis consistent with perinatal asphyxia.

3.24    Dr. Puig's admission note described a baby with APGAR 3/5 born with perinatal asphyxia and suspected sepsis.

3.25    Arrangements were made to transfer Markus to the NICU in Hospital La Concepción and he was transferred by ambulance around 12:45.

3.26    Upon arrival to Hospital de la Concepción Markus was described at 1:00 AM as having gray colored skin, cyanotic and gray nailbeds, hypotonic, hypoactive, acrocyanotic, hypotonic, hypoactive, with severe retractions and in respiratory distress.

3.27    Markus was admitted to NICU with a diagnosis of Respiratory failure, clinical sepsis, perinatal asphyxia.

3.28    The arterial blood gases taken at 2:27AM continued to evidence metabolic acidosis.

3.29    A head sonogram did not reveal evidence of intracranial hemorrhage.

3.30    Markus was admitted under the service of Dr. Suárez Villamil.

3.31    By noon of September 28th, Markus was suffering seizures for which Phenobarbital

was ordered.

3.32    On September 29th he was evaluated by a neurologist whose diagnostic impression was acute encephalopathy, most likely hypoxic ischemia and status epilepticus.

3.33    Markus remained hospitalized under the care of Dr. Suárez and the hospital physicians and paramedical personnel until October 22, 2012.

3.34    During this hospitalization he was treated for clinical sepsis, respiratory failure, patent ductus arteriosis, mechanical ventilation, perinatal asphyxia, seizures, jaundice, received blood transfusions, among others.

3.35    Markus remained intubated and connected to a mechanical ventilator until October 7th, 2012.

3.36    Plaintiffs Cyd Marie Cordero and Osvaldo Rivera never suspected that Hospital de la Concepción's treatment and management of their son's condition had been negligent and caused him damages.

3.37    Hospital de la Concepción obstructed and delayed the investigation of Markus' complications by providing plaintiffs with an incomplete record.

3.38    Because the first record was lacking crucial information, a complete record was requested by the expert consultant in order to fully evaluate Markus' condition and progression.

3.39    As a result of that evaluation, Plaintiffs have been recently informed by the expert consulted that the negligent respiratory management, among other negligent acts and omissions, by Hospital de la Concepción's hospital physicians and personnel, including Dr. Suárez Villamil, caused Markus additional brain damage.

3.40    On January, 2013 Markus was diagnosed by a pediatric neurosurgeon after a brain

MRI was done, with multicystic leukoencephalopathy and microcephaly at risk of developmental delay.

3.41    Around March 2013 Markus presented seizures which continued to worsen.

3.42    Markus was then evaluated and started in treatment at the Texas Children Hospital where he has continued to be treated.

3.43    To this day Markus has been diagnosed and suffered with multiple disorders; including but not limited to leukoencephalopathy, developmental delay, hypertonia, hyperreflexia, microcephaly, seizure disorder, cortical visual impairment, sensorineural hearing loss, feeding problems, delayed motor development; gross developmental delay. No congenital defect has been detected that could have caused his damages.

3.44    Baby Markus Rivera Cordero suffered permanent brain damage because of the perinatal asphyxia that he suffered and subsequent negligent treatment.

3.45    Plaintiffs still lack complete and reliable medical and hospital records and therefore don't have full knowledge of all the facts relevant to the medical practice nor of all the persons liable for the damages caused to plaintiffs.

3.46    During and after his birth Markus was under the supervision of the physicians, nurses and paramedical personnel of Hospital Buen Samaritano and they are therefore jointly liable to plaintiffs for their negligent acts and/or omissions under the provisions of articles 1802 and 1803 of the Puerto Rico Civil Code.

3.47    Markus' damages were caused by the negligent and /or late treatment that was given to him by all codefendants. Had it not been by the tortious and negligent acts, errors and omissions of all co-defendants his damages, as well as plaintiffs' damages should have been

avoided.

3.48    Cyd Marie Cordero's as well as Markus' medical records at Hospital Buen Samaritano are incomplete and devoid of crucial information necessary for the assessment and proper follow up of a fetus and a newborn.

3.49    During the pre term and induced labor, Demerol with Phenergan and Pitocin were given to the mother putting the baby at risk for complications as the ones that happened, which were foreseeable.

3.50    Cyd Marie and Markus were the victims of multiple deviations of the standard care by Hospital Buen Samaritano's medical and paramedical personnel, to wit: failure to anticipate and identify the shoulder dystocia; failure to perform adequate and timely resuscitation and intubation; failure to adequately assess and monitor Markus.  The hospital personnel by their grossly negligent actions, errors and omissions caused and/or contributed to Markus' permanent damages.

3.51    Hospital Buen Samaritano is also liable to plaintiffs for allowing substandard practices by its physicians and personnel, including co-defendant Dr. Bonilla and Dr. Puig; to wit: failure to have adequate resuscitation equipment and personnel in the labor room; failure to have adequate protocols and norms for labor induction and labor monitoring ; failure to have adequate protocols and norms for newborns; failure to insure close observation of the fetus and the newborn; for allowing scant and deficient medical record keeping and alteration and manipulation of the medical record; for allowing practices in the management of the patient in violation of its own protocols and the best practice of medicine; among others.

3.52    Co-defendants Hospital Buen Samaritano is also liable for the negligent and

inadequate medical treatment given to the patients by its medical and paramedical personnel; for lack of supervision and monitoring; for the delayed and/or lack of implementation of diagnostic and therapeutic orders by its personnel, among others.

3.53    Hospital Buen Samaritano and Dr. Mabel Bonilla are also liable for the administration of medications which have risks and could cause complications to the newborn without informing nor alerting the mother of these risks; thus not procuring adequate informed consent.

3.54    The negligent acts, errors and omissions of Hospital Buen Samaritano, Inc.'s medical, technical, administrative and paramedical personnel directly caused and/or contributed to the damages suffered by Markus and plaintiffs.

3.55    Codefendant Dr. Mabel Bonilla is liable to plaintiffs for her substandard management of Ms. Cordero's labor; for induction of a pre term pregnancy in violation of the standard of care practices; for putting Markus and Cyd Marie at risk for the complications and damages that they suffered; for failure to insure close observation of the fetus and the progression of labor; for her delay in identifying the shoulder dystocia and her failure to correct it in a timely and adequate manner; for failing to deliver Markus in a timely manner; for failing to resuscitate Markus in a timely manner; for withholding very relevant information and/or giving false information about the delivery process; for alteration and manipulation of the medical record; for practices in the management of the patient in violation of the hospital's protocols and the best practice of medicine; among others.

3.56    Codefendant Dr. Puig is liable to plaintiffs for her substandard management of Markus emergency at birth; for her failure to timely and adequately resuscitate him; for her failure

to adequately document Marcus emergency as well as the treatment offered by her. Dr. Puig's negligent acts, errors and omissions directly caused and/or contributed to, Markus's damages.

3.57   Co-defendants Hospital de la Concepción is also liable for the negligent and inadequate medical treatment given to the patient by its medical and paramedical personnel, including Dr. Suárez Villamil; for lack of supervision and monitoring; for the delayed and/or lack of implementation of diagnostic and therapeutic orders by its personnel; for allowing practices in the management of the patient in violation of its own protocols of the best practice of medicine; for the negligent management of Markus respiratory condition and failure to adequately treat and correct his  ventilator problems;. The negligent acts, errors and omissions of their medical, technical, administrative and paramedical personnel directly caused and/or contributed and added to Markus' deterioration and permanent damages.

3.58   Richard Roe, Jane Doe and Dr. John Roe, are physicians or persons who treated the patients during their hospitalization at Hospital Buen Samaritano and Hospital de la Concepción, and who in some way caused and or contributed to Markus' damages as well as plaintiffs' damages and are jointly and severally liable to plaintiffs.

3.59   Corporation X is an entity whose identity is unknown to plaintiffs at this moment, which was in some way benefited by the tortious acts of one or all co-defendants and/or ordered or in any way had something to do with their tortious actions.

3.60   All codefendants are jointly and severally liable to plaintiffs under articles 1802 and 1803 of the Puerto Rico Civil Code for their torts and negligent acts and omissions, which departed from the standards of medical care and treatment recognized as adequate by the medical profession in light of the modern means of instruction, education and communication, and directly

caused and/or contributed Markus' damages as well as to injuries suffered by all plaintiffs. The conjugal partnership of any codefendant is also liable inasmuch as it benefited from his actions.

3.61   Plaintiffs also estimate that none of the co-defendants displayed the care nor the cautionary measures that a prudent and reasonable man would in such circumstances, thus not offering Markus the medical attention and supervision that was due to him.

3.62   As a direct consequence of herein co-defendants gross negligence, Cyd Marie Cordero has suffered, suffers and will forever suffer deep and severe mental and emotional anguishes, severe depression, and loss of enjoyment of life. She requests as compensation for her damages a sum of not less than **FIVE MILLION DOLLARS ($5,000,000.00).**

3.63   As a direct consequence of herein co-defendants gross negligence, Osvaldo Rivera has suffered, suffers and will forever suffer deep and severe mental and emotional anguishes, severe depression, and loss of enjoyment of life.  He requests as compensation for his damages a sum of not less than **ONE MILLION DOLLARS ($1,000,000.00).**

3.64   As a direct consequence of the herein defendants gross negligence plaintiff Markus Rivera Cordero, has suffered, suffers and will forever suffer permanent and total severe physical and mental disabilities, emotional distress, mental anguish, depression, loss of enjoyment of life, loss of consortium, immobility and other moral and physical damages for which he claims a sum of not less than **TEN MILLION DOLLARS ($10,000,000.00).**

3.65   In addition, Markus' capacity to generate income to support himself has been totally hindered and/or eliminated as a direct consequence of co-defendants' negligence.  Also, he will need medical treatment, care and support for the rest of his life , drugs, hearing or visual aids, clothing, food, special diets, psychiatric and rehabilitation care, vaccinations, specialized dental

care, medical care or extended stays at specialized facilities, future medical interventions, transportation and housing. Markus' claims a sum not less than **TEN MILLION DOLLARS ($10,000,000.00).**

3.66    Co-plaintiff Cyd Marie Cordero Paredes also requests a sum for loss of income and failure to generate income for which she claims a sum not less than **ONE MILLION DOLLARS ($1,000,000.00).**

WHEREFORE, plaintiffs respectfully request from this Honorable Court to:

1.  Grant a judgment against co-defendants for the sums herein requested together with pre-judgment interests, costs and reasonable attorney's fees.

2.  Grant plaintiffs such other relief, as it may deem proper and necessary under the circumstances.

3.  Pursuant to rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs also hereby request a trial by jury in this action.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 19th day of August, 2015.

**S/Rafael E. García Rodón**
**RAFAEL E. GARCÍA RODÓN**
USDC NO. 129911
Banco Popular de PR Bldg.
206 Tetuán Street
7th Floor, Suite 701
San Juan, PR 00901
Tel. (787) 722-7788
Fax (787) 722-7748
E-mail:  rgrlaw@gmail.com